# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **DIEGO LLORT,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:20-CV-94-LY** |
| | § | |
| **BMW OF NORTH AMERICA, LLC,** | § | |
| *Defendant* | § | |
| | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
  **UNITED STATES DISTRICT JUDGE**

Before the Court is Defendant's Motion to Dismiss pursuant to Rules 12(b)(1) and 12 (b)(6), filed April 9, 2020 (Dkt. 9); Plaintiff's Opposition to Defendant's Motion to Dismiss, filed April 22, 2020 (Dkt. 10); and Defendant's Reply, filed April 29, 2020 (Dkt. 11). On May 4, 2020, the District Court referred the motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 12.

## I.    Background

Bavarian Motor Works, commonly referred to as "BMW," is a German multinational company which produces luxury vehicles and motorcycles. Defendant BMW of North America, LLC ("BMW NA" or "Defendant"), a privately held Delaware limited liability company with its principle place of business Woodcliff Lake, New Jersey, is the wholesale importer and distributer of BMW vehicles in North America.

On April 11, 2015, Plaintiff Diego Llort, a Texas resident, purchased a pre-owned 2013 BMW X5 (the "Vehicle") from a BMW authorized dealer in Westmont, Illinois. The total sales price of the Vehicle was $56,168.20, and it came with a New Vehicle Limited Warranty and a Certified Pre-Owned Limited Warranty (collectively, "Warranty"). The Vehicle was equipped with a V8 twin-turbocharged engine known as the "N63 engine." Dkt. 7 ¶ 35. After Plaintiff purchased the Vehicle, he alleges, he discovered that the N63 engine contains a manufacturing defect "which causes the subject vehicle to consume engine oil at an extremely rapid rate." *Id.* ¶ 33. As a result, Plaintiff alleges that he was required to regularly add engine oil to the Vehicle in between the Defendant's recommended oil change intervals "in order to prevent his vehicle's engine from failing and suffering from other related damage." *Id.* ¶ 34. Plaintiff alleges that he complained to two BMW authorized dealers (in Illinois and Texas) during the warranty period about the Vehicle's excessive amount of oil usage, but both dealers refused to repair the engine.

Plaintiff alleges that Defendant has been aware of the manufacturing defect in the N63 engines since 2008, but has failed to disclose the issue to consumers. Plaintiff contends that he has spent approximately $7,500 in out-of-pocket costs associated with the Vehicle's excessive engine oil consumption, and that replacing the engine in the Vehicle would cost from $12,500 to $15,000. Plaintiff also alleges that the defective engine has the potential for a life-threatening accident caused by engine failure. Plaintiff further contends that he relied on Defendant's representations in the Warranty, including the representation that Defendant would repair the Vehicle's engine. Plaintiff alleges that he would not have purchased the Vehicle had he been made aware of its defective engine.

On January 27, 2020, Plaintiff filed this lawsuit against Defendant, seeking damages related to the Vehicle's excessive consumption of engine oil and Defendant's failure to honor the terms of

its warranty.[1] Plaintiff's Amended Complaint alleges (1) breach of warranty, pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ("MMWA"); (2) breach of implied warranty of merchantability, pursuant to the MMWA and Tex. Bus. & Com. Code § 2.314; (3) breach of express warranty, under Tex. Bus. & Com. Code § 2.313; (4) violation of the Texas Deceptive Trade Practices Act ("TDTPA"); (5) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (6) fraudulent concealment; and (7) unjust enrichment. Plaintiff seeks the following damages: an order approving revocation of acceptance of the Vehicle; monetary damages in the form of a refund of the full contract price, including trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiff on the contract; equitable relief including, but not limited to, replacement of the Vehicle with a new vehicle or repair of the Vehicle with an extension of the applicable express and implied warranties and service contracts, in the event that Plaintiff is not found to be entitled to revocation; incidental and consequential damages; treble and punitive damages; reasonable attorneys' fees; and such other and further relief as the Court deems just and proper.

Defendant argues in its Motion to Dismiss that Plaintiff's lawsuit should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.    Legal Standards

### A.  Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins.*

---

[1] A plethora of similar breach of warranty and class action suits have been filed against Defendant and/or BMW across the country, based on the allegedly defective N63 engine. *See* Dkt. 9 at 1 n.1; Dkt. 10 at 1 n.1 (listing cases).

*Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332.

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

In ruling on a Rule 12(b)(1) motion, the court may consider any of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

**B.  Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III.    Analysis

Defendant argues that this case should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because Plaintiff has failed to demonstrate that the amount in controversy satisfies the jurisdictional minimum, and alternatively, that Plaintiff has failed to state a claim under Rule 12(b)(6). The Court addresses Defendant's jurisdictional arguments first. *See Ramming*, 281 F.3d at 161 ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

### A.  Amount in Controversy

Plaintiff filed this suit in federal court, invoking both diversity and federal question jurisdiction under 28 U.S.C. §§ 1331 and 1332. Specifically, Plaintiff alleges in his Amended Complaint that the Court has (1) diversity jurisdiction under § 1332, "in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00," and (2) federal

question jurisdiction under § 1331 "pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B), in that the Plaintiff claims more than $50,000.00 in damages, exclusive of interest and costs, and under the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. § 1367." Dkt. 7 ¶¶ 8-9. Defendant argues that Plaintiff has failed to "demonstrate that he satisfies the jurisdictional minimum under either § 1332 or Magnuson-Moss Warranty Act." Dkt. 9 at 2. The Court first addresses whether Plaintiff has alleged sufficient facts to meet the jurisdictional threshold under § 1332.[2]

Section 1332 provides that the United States district courts have subject matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). "The party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000." *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003). Only the amount in controversy is at issue here.

To determine whether the $75,000 threshold is met, courts first look to the complaint and consider jurisdictional facts as of the time the complaint was filed. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938). It has long been recognized that "unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at 288-89 (footnotes omitted).

If the complaint does not allege a specific amount of damages to trigger the legal certainty test, then "the party invoking federal jurisdiction must prove by a preponderance of the evidence that

---

[2] Notably, in his Reply, Defendant fails to respond to Plaintiff's jurisdictional arguments with regard to 28 U.S.C. § 1332(a), instead focusing only on the Magnuson-Moss Warranty Act. *See* Dkt. 11 at 3-6.

the amount in controversy exceeds the jurisdictional amount." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). The district court first examines the complaint to determine whether it is "facially apparent" that the claims exceed the jurisdictional amount; if not, the court may rely on "summary judgment-type" evidence to ascertain the amount in controversy." *Id.*

### 1.     Civil Cover Sheet

Defendant first argues that Plaintiff cannot meet the $75,000 minimum controversy threshold because the Civil Cover Sheet attached to Plaintiff's Original Complaint indicates that Plaintiff is seeking no more than $57,000 in damages. Therefore, Defendant argues, Plaintiff has admitted that he is not seeking more than $75,000 in damages, and "the Court need not engage in any further analysis with respect to whether Plaintiff can satisfy the necessary amount in controversy to confer jurisdiction under 28 U.S.C. § 1332(a)." Dkt. 9 at 5.[3]

Defendant is correct that Plaintiff's Civil Cover Sheet states that Plaintiff is demanding $57,000. Dkt. 1-1 at 1. Defendant, however, is mistaken in contending that the amount alleged in a civil cover sheet determines the amount in controversy. Courts do not rely on the civil cover sheet when determining the amount in controversy because it is not considered part of the complaint. *See Mize v. BMW of N. Am., LLC*, No. 2:19-CV-007-Z-BR, 2020 WL 1526909, at *4 (N.D. Tex. Mar. 31, 2020) (agreeing with BMW NA's argument that "the Court's analysis will not be influenced by the civil coversheet when determining the amount in controversy because it is not part of the Amended Complaint."); *Pesole v. Health Care Serv. Corp.*, 277 F. Supp. 3d 866, 872 (N.D. Tex. 2017) ("[T]he court does not give the cover sheet any weight when determining

---

[3] Defendant made the opposite argument in a recent case in the Northern District of Texas. *See Mize v. BMW of N. Am., LLC*, No. 2:19-CV-007-Z-BR, 2020 WL 1526909, at *4 (N.D. Tex. Mar. 31, 2020) ("BMW next argues that the FCR improperly included Plaintiff's Civil Cover Sheet in its determination of the Amount in Controversy.").

whether [plaintiff] has met her burden."); *Good v. Kroger Tex., L.P.*, No. 4:13-CV-462-A, 2013 WL 3989097, at *2 (N.D. Tex. Aug. 5, 2013) (noting that a "box checked on a state civil cover sheet is insufficient to show that an amount in controversy is facially apparent").[4] As the Southern District of Texas reasoned:

> the election [of the Civil Cover Sheet] is simply too imprecise to make the requisite demonstration of the amount in controversy for purposes of diversity jurisdiction. From this representation, the Court cannot determine what law is applicable or whether the plaintiff seeks an amount which can be recovered under applicable law. The civil cover sheet is not a pleading and does not contain the certifications required by Rule 11 of the Federal Rules of Civil Procedure.

*Gonzalez v. Wal-Mart Stores, Tex., LLC*, Civ. No. H-14-2880, 2015 WL 3613648, at *4 (S.D. Tex. June 9, 2015) (citations omitted). Accordingly, the Court rejects Defendant's argument that the Civil Cover Sheet demonstrates that Plaintiff is seeking less than $75,000.

## 2.      Complaint

As noted, to determine whether the $75,000 threshold is met, the Court must first look to the Complaint and consider jurisdictional facts as of the time it was filed. *See St. Paul Mercury*, 303 U.S. at 289-90. Plaintiff's Original Complaint alleges that "this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00." Dkt. 1 ¶ 9. The Complaint further alleges that "the cost to repair the Vehicle that involves an engine replacement ranges from $12,500.00 to $15,000.00," and that "Plaintiff has spent approximately

---

[4] *See also Favors v. Coughlin*, 877 F.2d 219, 220 (2d Cir.1989) (per curiam) ("The civil cover sheet, of course, is merely an administrative aid to the court clerk, and is therefore not typically considered part of a litigant's pleading papers."); *Baker v. Sears Holding Corp.*, 557 F. Supp. 2d 1208, 1215 (D. Colo. 2007) (noting that "reliance solely on the Civil Cover Sheet as a demonstration of the amount in controversy is not permissible, for several reasons"); *Valley v. State Farm Fire and Cas. Co.*, 504 F. Supp. 2d 1, 6 (E.D. Pa. 2006) (finding that court was not bound by state civil cover sheet that reported an amount in controversy of less than $50,000).

$7,500.00 in out-of-pocket costs associated with the Vehicle's excessive engine oil consumption." *Id.* ¶¶ 21-22. Plaintiff thus seeks a total of $22,500 in economic damages.

While $22,500 in economic damages would not meet the jurisdictional threshold, Plaintiff's Complaint also seeks treble damages and attorneys' fees under the TDTPA for Defendants' "intentional concealment of and failure to disclose the oil consumption defect." Dkt. 1 ¶ 130. Under the TDTPA, a plaintiff may be entitled to recover up to three times the amount of damages if "the conduct was committed intentionally." TEX. BUS. & COMM. CODE ANN. § 17.50(b)(1) (West 2005). In addition, the TDTPA provides for the recovery of reasonable and necessary attorneys' fees. *Id.* § 17.50(d) ("Each consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees."). Courts routinely include treble damages and attorneys' fees under the TDTPA in determining the amount in controversy under § 1332(a). *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("If a state statute provides for attorney's fees, such fees are included as part of the amount in controversy."); *Mize*, 2020 WL 1526909, at *4 (adopting Magistrate Court's determination that plaintiff met jurisdictional amount where plaintiff sought treble damages and attorneys' fees under the TDTPA); *Horton v. Allstate Vehicle & Prop. Ins. Co.*, No. 5-19-CV-00140-FB-RBF, 2019 WL 1552494, at *2 (W.D. Tex. Apr. 9, 2019) (holding that it was proper to include mental anguish damages, attorneys' fees, and treble economic and mental-anguish damages pursuant to the TDTPA in calculating amount in controversy), *report and recommendation adopted*, No. CV SA-19-CA-0140-FB, 2019 WL 2563837 (W.D. Tex. May 1, 2019). Trebling Plaintiff's damages to $67,500 and adding a reasonable amount of attorneys' fees clearly would raise Plaintiff's damages above the jurisdictional threshold.

Based on the foregoing, the Court finds that Plaintiff has alleged sufficient facts to show that the amount in controversy in this case meets the jurisdictional minimum of $75,000 under 28 U.S.C. 1332(a).[5] Accordingly, Defendant's Motion to Dismiss based on this argument should be denied.

## B. Standing

Defendant next argues that all of Plaintiff's claims should be dismissed because Plaintiff lacks Article III standing.[6] Specifically, Defendant argues that Plaintiff lacks standing because his claims are too speculative, and he fails to adequately allege any loss or injury incurred other than the loss of $7,500 in out-of-pocket expenses. The Court disagrees.[7]

In order to establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a likelihood that the injury can be redressed by a favorable decision. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). An injury in fact must be "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Here, Plaintiff alleges that his injuries have already occurred, his Vehicle lost substantial value due to the alleged engine defect, and he

---

[5] Because the Court finds that it has jurisdiction over this case under 28 U.S.C. § 1332(a), the Court need not address whether it has jurisdiction pursuant to the Magnuson-Moss Warranty Act. *See Harris v. BMW of N. Am., LLC*, No. 4:19-CV-00016, 2019 WL 4861379, at *3 (E.D. Tex. Oct. 2, 2019).

[6] Defendant improperly raised its standing argument under Rule 12(b)(6), Dkt. 9 at 10, but standing is a component of subject matter jurisdiction, and it is properly raised by a motion to dismiss under Rule 12(b)(1), not Rule 12(b)(6). *See Hollis v. Lynch*, 121 F. Supp. 3d 617, 626 (N.D. Tex. 2015) (noting that "whether a party has proper standing is a question of subject matter jurisdiction") (citing *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006)).

[7] BMW has made this same lack-of-standing argument in similar breach of warranty cases, without success. *See Harris*, 2019 WL 4861379, at *3 ("Taking Plaintiffs' claims as true, there is no doubt that Plaintiffs' complaint alleges economic damages that satisfy Article III's injury in fact, causation, and redressability requirements."); *Bang v. BMW of North America, LLC*, Civil Action No. 15-6945, 2016 WL 7042071, at *4 (D.N.J. Dec. 1, 2016) ("Here, Plaintiffs have alleged injuries that have already occurred, as well as imminent future injury," and "they have satisfied Article III's injury in fact requirement.").

suffered out-of-pocket expenses for extra engine oil and frequent oil changes, and he seeks money damages for economic losses sustained. Taking Plaintiff's claims as true, Plaintiff alleges economic damages that satisfy Article III's injury in fact, causation, and redressability requirements. Accordingly, Plaintiff has standing to bring this action. *See Harris*, 2019 WL 4861379, at *3; *Bang*, 2016 WL 7042071, at *4. Accordingly, Defendant's Motion to Dismiss under Rule 12(b)(1) should be denied.

### C. Defendant's Rule 12(b)(6) Motion

Defendant argues that Plaintiff's First Amended Complaint ("Complaint") should be dismissed in its entirety because Plaintiff has merely pled "vague, non-specific facts" that fail to show "a plausible claim for relief." Dkt. 9 at 10. Defendant argues that Plaintiff has simply alleged boilerplate allegations without any supporting facts. The Court finds that Defendant's general argument that Plaintiff's 34-page Complaint lacks specificity is entirely without merit. The Court will, however, address Defendant's specific arguments regarding Plaintiff's claims.

### 1. TDTPA and ICFA Claims

Plaintiff alleges that Defendant violated the TDTPA, TEX. BUS. & COM. CODE § 17.50(a) (West 2005), and the ICFA, 815 ILL. COMP. STAT. ANN. 505/2 (West 1973), by "false, misleading or deceptive acts or practices" with regard to the Vehicle's alleged defective engine. Defendant argues that Plaintiff's claims under the TDTPA and ICFA fail because Plaintiff was a subsequent purchaser of a used vehicle, and that his claims lack the specificity required under Federal Rule of Civil Procedure 9(b).[8] Both of Defendant's arguments fail.

In order to state a claim under the TDTPA, a plaintiff must allege the following elements: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts,

---

[8] Again, Defendant has raised these same arguments unsuccessfully in similar breach of warranty cases. *See Mitze*, 2020 WL 1526909, at **8-9; *Harris*, 2019 WL 4861379, at *5.

and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing § 17.50(a)(1)).[9] To prove a TDTPA action for failure to disclose information, as in this case, the plaintiff must show (1) a failure to disclose, (2) which was known at the time of the transaction, (3) which was intended to induce the plaintiff into a transaction, and (4) that the plaintiff otherwise would not have entered the transaction if the information had been disclosed. *Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 388 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "To be actionable under the DTPA, a failure to disclose material information necessarily requires that the defendant have known the information and have failed to bring it to the plaintiff's attention." *Doe*, 907 S.W.2d at 478. In addition, federal courts have held that claims under the TDTPA must also satisfy Rule 9(b)'s particularity requirement. *E.g., Gonzalez v. State Farm Lloyds*, 326 F. Supp. 3d 346, 350 (S.D. Tex. 2017); *SHS Inv. v. Nationwide Mut. Ins. Co.*, 798 F. Supp. 2d 811, 815 (S.D. Tex. 2011).

As the Northern District of Texas concluded, the Court finds that Plaintiff has plausibly pled a claim under the TDTPA. *See Mize*, 2020 WL 1526909, at *9 (holding that plaintiffs plausibly pled TDTPA claim where plaintiffs "pleaded that BMW, through its authorized dealers, failed to disclose the N63 engine defect, that it was material information about the vehicle known by BMW prior to each of Plaintiff's sales, and BMW withheld the information of the defect as it intended to induce Plaintiffs to purchase the vehicles"). Specifically, Plaintiff alleges in his Complaint that Defendant made false and misleading statements regarding the Vehicle's alleged defective engine at the time he purchased the Vehicle, and again when he brought the Vehicle back to the authorized

---

[9] Similarly, in order to state a claim under the ICFA, a plaintiff must show: "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012). Because the analysis is the same under the ICFA as the TDTPA, the Court need only analyze Plaintiff's TDTPA claim.

dealers in Illinois and Texas for repairs. Specifically, Plaintiff alleges that Defendant knew about the oil consumption defect since 2008 and "nevertheless concealed and failed to disclose the defective nature of the subject vehicle and its engine to Plaintiff at the time of purchase and thereafter." Dkt. 7 ¶¶ 124, 145. Plaintiff contends that:

> Defendant acquired knowledge of the oil consumption defect prior to Plaintiff acquiring the subject vehicle, through sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data, early consumer complaints about the engine defect made directly to Defendant and its network of dealers, aggregate warranty data compiled from Defendant's network of dealers, testing conducted by Defendant in response to these complaints, as well as warranty repair and parts replacement data received by Defendant from Defendant's network of dealers, amongst other sources of internal information.
>
> ***
>
> By failing to disclose and concealing the defective nature of the N63 engine from Plaintiff, Defendant violated the Texas Deceptive Practices Act as it represented that the subject vehicle and its engine had characteristics and benefits that it does not have, and represented that the subject vehicle and its engine was of a particular standard, quality, or grade when it was of another.

*Id.* ¶¶ 123, 125.

Plaintiff further alleges that he "relied upon Defendant's representations contained within Defendant's New Vehicle Limited Warranty that accompanied the sale of the Vehicle, including the representation that Defendant would repair the Vehicle's engine; these representations were material to Plaintiff's decision to purchase the Vehicle." *Id.* ¶ 25. Plaintiff claims if he had "known that the subject vehicle and its engine was defective at the time of purchase, he would not have purchased the subject vehicle." *Id.* ¶ 128. Plaintiff further alleges that Defendant, through the authorized dealers, made repeated misrepresentations to him that the excessive oil consumption was normal. *Id.* ¶ 20. Plaintiff alleges that "BMW's authorized dealers are agents for purpose of vehicle repairs, and knowledge of a defect reported to any such dealer can be imputed to BMW."

*Id.* ¶ 32. Plaintiff further alleges that all of the above "false, misleading, or deceptive acts or practices" were a producing cause of the economic damages he sustained. *Id.* ¶ 129.

The Court finds that Plaintiff has pled his claims with sufficient specificity to give Defendant notice of the theory of misconduct it must defend against, which is all that is required at this stage of the proceedings. Accordingly, Defendant's Motion to Dismiss Plaintiff's TDTPA claim is without merit. *See Mitze*, 2020 WL 1526909, at **8-9 (denying motion to dismiss TDTPA claim); *Harris*, 2019 WL 4861379, at *5 (same).

Defendant next argues that Plaintiff's TDTPA claim fails because Plaintiff is a subsequent purchaser of a used vehicle. Defendant argues that because it did not directly sell the Vehicle to Plaintiff, "BMW NA therefore as matter of law did not make any representations to Plaintiff or conceal any information from Plaintiff in the context of Plaintiff's actual purchase of the vehicle." Dkt. 9 at 12. Again, the Northern District of Texas has rejected this precise argument:

> BMW rests its arguments on *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, where the Texas Supreme Court explained that "a downstream buyer can sue a remote seller for breach of implied warranty, but cannot sue under the DTPA." 146 S.W. 3d. 79, 87 (Tex. 2004) (emphasis in original). However, BMW mischaracterizes the holding of this case in its application here.
>
> To clarify, the Texas Supreme Court was confronted with the issue of assigning rights to sue under the DTPA where a "downstream purchaser" brought express warranty DTPA claims "against a remote manufacturer, even though there was no privity of contract between them." PPG Indus., Inc., 146 S.W. 3d. at 88. Further, the Texas Supreme Court explained that the downstream purchaser "asserted no DTPA claims in its own right, as it had no connections with PPG's original . . . sale, and never saw any PPG advertisements or warranties before it bought the building." *Id.*
>
> Here, in accordance with the FCR, Smith's allegations do not establish her as a "downstream purchaser." Rather, Smith alleges she purchased the vehicle from BMW, in privity of contract, when she purchased her vehicle with a Certified Pre-Owned Warranty. ECF No. 43 at 17–18. Under BMW's reasoning, a consumer who decides to purchase a vehicle after his lease period, but still directly

> from an authorized BMW dealer—like Pritchett did here—would
> also be precluded from bringing DPTA claims because the vehicle
> purchased would be technically "used." This Court declines to
> stretch the words of the Texas Supreme Court to fit that narrative.

*Mitze*, 2020 WL 1526909, at *8. For the same reasons, the Court rejects Defendant's argument

here.

Defendant also argues that Plaintiff is improperly seeking recovery under both the TDTPA and

ICFA. Because Plaintiff is alleging that Defendant, through its authorized dealer agents, made

misrepresentations at the time of purchase and again when he visited the dealers in Illinois and

Texas for repair of the engine, Plaintiff has alleged sufficient facts to state plausible claims for

relief under both statutes. Accordingly, this argument is without merit.

## 2.     Breach of Express Warranty Claim

Plaintiff also alleges a breach of express warranty claim under Texas Business & Commerce

Code § 2.313. To succeed on a breach of express warranty claim, the plaintiff must prove: (1) an

affirmation or promise made by the seller to the buyer; (2) that such affirmation or promise was

part of the basis for the bargain, e.g., that the buyer relied on such affirmation or promise in making

the purchase; (3) that the goods failed to comply with the affirmation or promise; (4) that there

was financial injury; and (5) that the failure to comply was the proximate cause of the financial

injury to the buyer. *Lindemann v. Eli Lilly and Co.*, 816 F.2d 199, 202 (5th Cir. 1987) (citations

omitted). Under Texas law, a claim for breach of express warranty sounds in contract, not in tort.

*See Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60-62 (Tex. 2008). Thus, the

heightened pleading standards of Rule 9(b) do not apply. *See Schouest v. Medtronic, Inc.*, 13

F. Supp. 3d 692, 709 (S.D. Tex. 2014) (finding that breach of express warranty claim was not

subject to Rule 9(b)).

Plaintiff's allegations in the Complaint satisfy all of the required elements. Specifically, Plaintiff alleges that Defendant agreed to "repair or replace defective components found to be defective in material or workmanship" for four years/50,000 miles under the New Vehicle Limited Warranty, and for six years/100,000 miles under the Certified Pre-Owned Limited Warranty. Dkt. 7 ¶¶ 26-27. Plaintiff alleges that it relied on the warranties when he purchased the Vehicle. *Id.* ¶ 7. Plaintiff alleges that he provided Defendant with notice of the alleged defect and gave Defendant reasonable opportunities to repair it during the warranty period, but that Defendant failed to do so. *Id.* ¶¶ 20, 70. Plaintiff also pled damages as a result of the breach of warranty, including economic loss from diminished value of and his overpayment for the vehicle and out-of-pocket costs arising from Defendant's failure to repair the defective engine. Accordingly, Plaintiff has alleged sufficient facts to state a plausible breach of express warranty claim. *See Mize*, 2020 WL 1526909, at *7 (finding that plaintiffs' allegations satisfy the pleading requirements to state their breach of express warranty claims).

### 3.      Breach of Implied Warranty of Merchantability Claim

Plaintiff also asserts a breach of implied warranty of merchantability claim under Texas Business & Commerce Code § 2.314(b)(3), alleging that the Vehicle is not "fit for the ordinary purposes for which such goods are used." Defendant argues that Plaintiff has failed to allege with sufficient specificity how the Vehicle is not merchantable. The Court disagrees.

"To establish a breach of the implied warranty of merchantability, a plaintiff must show that the product contained a defect that renders it unfit for its ordinary purpose, the defect existed when it left the manufacturer's possession, and that the defect caused the plaintiff to suffer injury." *Barragan v. Gen. Motors LLC*, No. 4:14-CV-93-DAE, 2015 WL 5734842, at *8 (W.D. Tex. Sept. 30, 2015) (citing *Gen. Motors Corp. v. Garza*, 179 S.W.3d 76, 81 (Tex. App. 2005, no pet.)). "As applied to cars, the implied warranty of merchantability is simply a guarantee that they will

operate in a safe condition and substantially free of defects and, therefore, where a car can provide safe, reliable transportation, it is generally considered merchantable." *Bang*, 2016 WL 7042071, at *7 (cleaned up).

Plaintiff alleges a plausible set of facts showing how the Vehicle was not merchantable. Plaintiff alleges that the oil consumption defect caused the Vehicle to consume an excessive amount of engine oil, which required Plaintiff to regularly add engine oil to the Vehicle between recommended oil change intervals to prevent catastrophic failure of the Vehicle's N63 engine and life-threatening accidents. Dkt. 7 ¶ 103. Plaintiff contends that a car "which is persistently at risk of engine failure is not merchantable." Dkt. 10 at 14. Plaintiff further alleges that the oil consumption defect existed when the Vehicle left the dealership's possession, and that the defect caused Plaintiff to suffer economic loss. Accordingly, Plaintiff has alleged sufficient facts to state a plausible breach of implied warranty of merchantability claim. *See Mize*, 2020 WL 1526909, at *7 (finding that plaintiffs' allegations satisfy the pleading requirements to state their breach of implied warranty claims).

### 4.       Claims under the Magnuson-Moss Warranty Act

Plaintiff also alleges breach of express warranty and breach of implied warranty of merchantability claims under the MMWA. The provisions of the MMWA that create a private cause of action permit a "consumer" to sue a warrantor for (1) a violation of the substantive provisions of the Act, or (2) breach of a written or implied warranty. *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1062-63 (5th Cir. 1984). The Act "does not provide an independent basis for liability, but instead provides a federal cause of action for state law express and implied warranty claims." *Taliaferro v. Samsung Telecomms. Am., LLC*, No. 3:11-CV-1119-D, 2012 WL 169704, at *10 (N.D. Tex. Jan. 19, 2012).

While Defendant moved to dismiss Plaintiff's MMWA's claim for lack of jurisdiction under Rule 12(b)(1), it has not moved to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim. Regardless, because Plaintiff has stated plausible claims for relief for his breach of express warranty and breach of implied warranty of merchantability claims under Texas law, the Court finds that Plaintiff has alleged sufficient facts to support a plausible claim for relief under the MMWA. *See Mize*, 2020 WL 1526909, at *7 ("The Magistrate Judge properly found that Plaintiffs' allegations satisfy the pleading requirements to state their breach of express and implied warranty claims, and thus have stated a claim under Mag-Moss."); *Bedgood v. Nissan N. Am., Inc.*, No. A-16-CA-00281-SS, 2016 WL 3566689, at *3 (W.D. Tex. June 24, 2016) (noting that plaintiffs' MMWA claims were contingent on their state law warranty claims and therefore denying motion to dismiss MMWA claim where court denied breach of the implied warranty of merchantability claim); *Deburro v. Apple, Inc.*, No. A-13-CA-784-SS, 2013 WL 5917665, at *8 (W.D. Tex. Oct. 31, 2013) ("Plaintiffs' Magnuson–Moss claims are thus contingent upon their state law warranty claims, and the failure of those state law claims requires dismissal of the federal claims as well."); *see also Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 906 (N.D. Cal. 2015) ("The Court and all Parties agree 'claims under the Magnuson–Moss Act stand or fall with [the] express and implied warranty claims under state law.'") (quoting *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)).

**5.      Fraudulent Concealment Claim**

Plaintiff also asserts an independent cause of action for fraudulent concealment under Texas law. However, "fraudulent concealment is not an independent cause of action, but is rather a tolling provision to prevent the defendant from relying upon a statute of limitations period as an affirmative defense." *Sweezey v. C.R. Bard Inc.*, No. 3:19-CV-2172-S, 2020 WL 1237394, at *1 (N.D. Tex. Mar. 12, 2020) (citation omitted); *see also ExxonMobil Corp. v. Lazy R Ranch, LP*,

511 S.W.3d 538, 544 n.21 (Tex. 2017) ("The doctrine of fraudulent concealment tolls the statute of limitations until the fraud is discovered."); *Cooper v. Trent*, 551 S.W.3d 325, 335 (Tex. App. 2018, pet. denied) (noting that fraudulent concealment is an affirmative defense to the statute of limitations and not an independent cause of action). Accordingly, Plaintiff's fraudulent concealment claim, asserted as an independent cause of action in the Complaint, must be dismissed. *See Sweezey*, 2020 WL 1237394, at *1 (granting summary judgment as to plaintiff's fraudulent concealment claim because it is not an independent cause of action under Texas law); *Gordon v. Sig Sauer, Inc.*, No. CV H-19-585, 2019 WL 4572799, at *16 (S.D. Tex. Sept. 20, 2019) ("Because fraudulent concealment is not an independent cause of action, but an affirmative defense, [plaintiff's] fraudulent concealment claim is dismissed . . . .").

### 6.      Unjust Enrichment Claim

Plaintiff also alleges an unjust enrichment claim under Texas law in his Complaint. Defendant argues that Plaintiff's unjust enrichment claim must be dismissed because it is not an independent cause of action under Texas law. *See Hancock v. Chicago Title Ins. Co*., 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009) (noting that Texas law does not afford an independent cause of action for unjust enrichment); *Walker v. Cotter Properties, Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.) ("Unjust enrichment is not an independent cause of action."). Defendant is correct; the Court also notes that Plaintiff failed to respond to this argument. Accordingly, Plaintiff's unjust enrichment claim should be dismissed.

### 7.      Statute of Limitations

Finally, Defendant argues that all of Plaintiff's claims are time-barred under the various statutes of limitations. *See* TEX. BUS. & COM. CODE ANN. § 17.565 (West 1987) (two-year statute of limitations for TDTPA claims); 815 ILL. COMP. STAT. 505/10a(e) (West 2000) (three-year statute of limitations for ICFA claims); TEX. BUS. & COM. CODE ANN. § 2.725(a) (West 2009)

(four-year statute of limitations for a breach of express and implied warranty claims). Defendant argues that because Plaintiff bought the Vehicle in April 2015 but did not file this lawsuit until January 2020, all of his claims are time-barred. Plaintiff argues that the applicable statutes of limitations are tolled on the grounds of the discovery rule, estoppel, and fraudulent concealment.

The statute of limitations is an affirmative defense. *See* FED. R. CIV. P. 8(c). "A plaintiff typically is not required to plead, in the complaint, facts that negate an affirmative defense." *Jaso v. Coca Cola Co.*, 435 F. App'x 346, 351 (5th Cir. 2011). Therefore, "[w]hile a statute-of-limitations defense may be raised in a motion to dismiss under FED. R. CIV. P. 12(b)(6), such a motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Abdul-Alim Amin v. Universal Life Ins. Co.*, 706 F.2d 638, 640 (5th Cir. 1983) (citation omitted). Like other federal courts have found in similar cases, the Court finds that Plaintiff's Complaint "properly delineates the specific facts alleged by Plaintiffs to suggest that the statute of limitations may have been tolled by BMW's concealment." *Mize*, 2020 WL 1526909, at *7. Accordingly, Defendant's statute of limitations argument should be denied at this stage of the proceedings. *See id.* at *7 n.13 (listing cases in which BMW's statute of limitations argument has been denied at the Rule 12(b)(6) stage); *River Capital Advisors of N. Carolina, Inc. v. FCS Advisors, Inc.*, No. 4:10-CV-471, 2011 WL 831282, at *9 (E.D. Tex. Feb. 7, 2011) (denying statute of limitations argument at motion to dismiss stage and noting that "Plaintiff is under no obligation to plead against a possible affirmative defense or the possible exceptions to an affirmative defense"), *report and recommendation adopted*, No. 4:10-CV-471, 2011 WL 831186 (E.D. Tex. Mar. 3, 2011).

## IV.     Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) (Dkt. 9) be **GRANTED IN PART AND DENIED IN PART**. The Court **RECOMMENDS** that the District Court **DENY** Defendant's Rule 12(b)(1) Motion to Dismiss for lack of jurisdiction. The Court **FURTHER RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss under Rule 12(b)(6) with regard to Plaintiff's fraudulent concealment and unjust enrichment claims, but **DENY** the Motion with regard to all other claims. **IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

## V.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on June 2, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

21